UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Beaulieu, a/k/a
Crystal Beaulieu

    v.                                              Civil No. 14-cv-280-SM

John P. Aulis, Aaron M. Belanger,
Edward P. Kirrane, Dominic M. Salce,
Michael Shepley, Paul Laflamme,
Kevin Washburn, Jason Whitney,
Scott Collier, and Rueben James Ruiter


**REPORT AND RECOMMENDATION**

Plaintiff Christopher (a/k/a Crystal[1]) Beaulieu is an inmate at the New Hampshire State Prison ("NHSP") who filed claims against corrections officers and two inmate defendants. The clerk of court entered defaults against the inmate defendants, Scott Collier and Rueben James Ruiter, after they failed to appear.[2] See Doc. Nos. 50, 57. Before the court are Beaulieu's motions (Doc. Nos. 92, 93), and supplemental exhibits (Doc. No. 97), seeking default judgments and damages as to Ruiter and Collier.

On December 16, 2016, the court held an evidentiary hearing on the motions for default judgment. Neither Ruiter nor Collier

---

[1]Beaulieu identifies as transsexual, and the court defers to her gender preference in this Report and Recommendation.

[2]The court has granted summary judgment on the remaining claims against the corrections officers. See Sept. 28, 2016 Order (Doc. No. 90).

appeared at the hearing, and neither of them responded to Beaulieu's motions for default judgment, although the court had caused a copy of each motion and a notice of the hearing to be mailed to them at their current places of incarceration. See Nov. 22 & 23, 2016 Orders.

### Default Judgment Standard

After a default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "Although a defaulting party admits the factual basis of the claims asserted against it, the defaulting party does not admit the legal sufficiency of those claims." 10-55 James Wm. Moore, Moore's Federal Practice ¶ 55.32[1][b] (3d ed. 2013). Therefore, before entering default judgment, the court must determine whether the admitted facts state actionable claims. Vázquez-Baldonado v. Domenech, 595 F. App'x 5, 5 (1st Cir. 2015). It is the plaintiff's burden to establish an entitlement to recovery. Joe Hand Promotions, Inc. v. Rajan, No. 10-40029-TSH, 2011 WL 3295424, at *3 n.2, 2011 U.S. Dist. LEXIS 83311, at *8 n.2 (D. Mass. July 28, 2011).

The standard for determining whether default judgments may be entered is "akin to that necessary to survive a motion to

dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). Accordingly, a default judgment will not issue if the plaintiff's factual allegations, and all reasonable inferences therefrom, taken in the light most favorable to the plaintiff, fail to state a claim for relief. Lister v. Bank of Am., N.A., 790 F.3d 20, 23 (1st Cir. 2015).

While liability is admitted, "[a] party who defaults by failing to plead or defend does not admit the allegations in the claim as to the amount of damages." 10-55 James Wm. Moore, Moore's Federal Practice ¶ 55.32[1][c] (3d ed. 2013). Rule 55(b) of the Federal Rules of Civil Procedure states that the court may conduct a hearing if, among other things, it needs to "determine the amount of damages" or "establish the truth of any allegation by evidence." "[T]he defaulting party is liable only for those damages that arise from the acts and injuries that were pleaded." 10-55 James Wm. Moore, Moore's Federal Practice ¶ 55.32[1][c] (3d ed. 2013). Rule 54(c) further provides that a default judgment must not be different in kind from, or exceed the amount demanded in, the pleadings. Fed. R. Civ. P. 54(c).

**Discussion**

I. **Assault and Battery**

    A.    Standard

Beaulieu has claimed that Ruiter and Collier are each liable to him for "assault and battery" under state law, for separate incidents.

> A successful assault claim requires that "(1) the defendant . . . intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent apprehension of such contact." A defendant may be held liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."

Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75-76 (D.N.H. 2013) (citations omitted); see also Silva v. Warden, 150 N.H. 372, 374-75, 839 A.2d 4, 6 (2003).

    B.    January 2012 Incident Involving Ruiter

Beaulieu contends that Ruiter is liable for an "assault and battery" that occurred on January 19, 2012. Doc. No. 19, at 1. On January 19, 2012, both Beaulieu and Ruiter were housed on C-tier, in the NHSP Special Housing Unit ("SHU"). Ruiter was a "tier worker," whose cleaning duties involved being outside of his cell in the corridor at times. On January 19, Ruiter was in the corridor, near Beaulieu's cell, while Beaulieu's cell was unlocked. See Doc. No. 1, at 11. Another inmate from a nearby cell egged Ruiter on to "bust [Beaulieu's] sh*t." Id. A security video shows Ruiter "leaping into plaintiff's cell

swinging." Doc. No. 19, at 2. After striking Beaulieu, Ruiter left Beaulieu's cell and bragged to other SHU inmates that he had "just beat the sh*t out of" Beaulieu. Doc. No. 1, at 12. Ruiter then reentered Beaulieu's cell and hit her again. Id. at 12. Beaulieu suffered injuries around her eye that a corrections officer noticed later. Id. The facts alleged in Beaulieu's pleadings, admitted by Ruiter's failure to answer, establish that Ruiter is liable to Beaulieu for the intentional torts of assault and battery, for the January 2012 attack on Beaulieu.

C. March 2014 Incident Involving Collier

Beaulieu has claimed that Collier is liable for an "assault and battery" that occurred in March 2014. Doc. No. 19, at 2; Doc. No. 1, at 31. Collier's prison job in March 2014 allowed him to have unsupervised contact with Beaulieu, while Collier was cleaning showers in the NHSP Secure Psychiatric Unit ("SPU"). Doc. No. 1, at 31. Collier sprayed Beaulieu with the firehose he was using to clean the SPU shower more than once, in a manner that was "not accidentally done." Doc. No. 1, at 31.

The facts alleged in Beaulieu's pleadings, taken as true, with all reasonable inferences construed in Beaulieu's favor, establish that Collier intentionally sprayed Beaulieu with a firehose, without her consent. Those allegations, deemed

admitted by Collier's failure to answer, establish Collier's liability for the intentional tort of battery under New Hampshire law.

**II. Damages**

Damages for bodily harm and emotional distress caused by an assault may be recovered without proof of pecuniary loss. See Restatement (Second) of Torts § 905 (1979). A plaintiff "may recover damages for emotional distress and personal humiliation that he proves he actually suffered, if his damage is of a kind that normally results from an assault and is normal and reasonable in its extent." Silva, 150 N.H. at 375, 839 A.2d at 6. Such damages may be proven by lay testimony. See id., 150 N.H. at 374-75, 839 A.2d at 6 ("allegations of an intentional assault do not require expert . . . testimony to prove damages for emotional and mental suffering"). It is not necessary that a plaintiff show actual physical injury to recover such damages. See id., 150 N.H. at 374, 839 A.2d at 6; Fischer v. Hooper, 143 N.H. 585, 592-93, 732 A.2d 396, 402 (1999)).

    A.   Damages as to Ruiter's Assault and Battery

Beaulieu seeks $10,300 in compensatory damages for physical injuries and emotional distress on her claim against Ruiter, relating to the January 2012 attack. Specifically, Beaulieu demands $5,300 as compensation for "assaulting plaintiff," and

$5,000 for "emotional distress," plus costs in an unspecified amount. Doc. No. 92-1.

Beaulieu's testimony at the December 16, 2016 hearing was consistent with the facts alleged in the pleadings. Beaulieu testified that she was sitting in her cell when she heard her cell door unlock. Ruiter, at the time, was standing near her cell in the corridor, and another inmate was telling him to attack Beaulieu. Ruiter then came into Beaulieu's unlocked cell "swinging," having been baited by other inmates, and attacked Beaulieu twice. Beaulieu testified that Ruiter struck her four or five times before leaving the first time, then hit her five or six times the second time using his hands and also kicking her in the head. Beaulieu testified that the attacks resulted in serious bruising around her face, above her eye, and on her forehead, and a split lip for at least two weeks, for which she sought medical attention. See N.H. Dep't of Corr. ("DOC") Progress Notes, Jan. 19, 2012 (Doc. No. 97-1, at 1-2). She further testified that she believes she suffered a concussion.

In the December 16, 2016 hearing, Beaulieu testified that in the years since the January 2012 assault she has had problems with her vision, particularly, with distance vision for which she has been prescribed glasses, as well as "random headaches," and sharp pains running from her upper lip to her forehead. She

7

attributes the vision problems, headaches, and facial pain to the assault, as, she said, they arose after the assault. She further testified that she has been told she has post-concussion syndrome.

Beaulieu testified that, as a result of Ruiter's January 2012 assault, whenever she hears a door open, she has a "panic attack," in which her chest tightens, her vision blurs, and she has difficulty breathing. She testified that these panic attacks often take approximately five minutes to resolve, sometimes more or less, and that it takes a lot of energy to control these panic attacks. She testified that the panic attacks wake her up at night if a door opens, and that loud noises make her jump. She further testified that she is "jumpy" and has a hard time being around other people, as she feels she always has to be on guard for possible assaults. She testified that she was diagnosed with post-traumatic stress disorder ("PTSD") after the January 2012 incident. A medical record, dated April 6, 2012, filed in support of Beaulieu's motion for a default judgment states that Beaulieu reported to a clinical mental health counselor that she was having nightmares about the January 2012 assault, and that she had trauma from other assaults in her past. See DOC Mental Health Servs., Apr. 6, 2012 SOAP Note (Doc. No. 97-1, at 3).

The court credits as true Beaulieu's testimony describing the January 2012 assault and battery, her physical injuries, and the temporary disfigurement she suffered. Beaulieu's description of the assault is corroborated by the DOC's contemporaneous investigations of the incident, and the surveillance video in the record. See Disciplinary Rep. (Doc. No. 59-20); Video, SHU C-tier, Jan. 19, 2012. Her description of facial injuries is consistent with medical records and photos taken of her shortly after the attack, which are also in the record. See DOC Progress Notes, Jan. 19, 2012 (Doc. Nos. 97-1, at 1-2); Photos (Doc. No. 59-20, at 10).

Beaulieu's testimony that she suffered emotional distress, including pain, anxiety, and disrupted sleep, as a result of the January 2012 attack is also generally credible. The pain and suffering and emotional distress she described does not appear unreasonable in its extent, which means that it can be proven without expert testimony. Beaulieu's demand of $10,300 as compensation for all of her injuries to date is consistent with the damages awarded in similar circumstances. See EEOC v. Meadowview Cmty. Action, Inc., CIV. NO. S-06-1562 GEB GGH, 2008 WL 314536, at *3, 2008 U.S. Dist. LEXIS 8033, at *6 (E.D. Cal. Feb. 4, 2008) ("[c]ases awarding damages for emotional distress . . . have awarded a wide range, from $5,000 to $20,000," in

circumstances in which plaintiffs, subjected to employment discrimination, felt "shocked, anxious, humiliated, hurt," and "suffered from stomach aches, sleeplessness, [and] nausea"), R&R adopted, CIV. NO. S-06-1562 GEB GGH, 2008 WL 683478, at *2, 2008 U.S. Dist. LEXIS 19673, at *1-*2 (E.D. Cal. Mar. 12, 2008); Jowers v. DME Interactive Holdings, Inc., No. 00 CIV. 4753 LTS KNF, 2006 WL 1408671, at *13, 2006 U.S. Dist. LEXIS 32536, at *12-*13 (S.D.N.Y. May 22, 2006) ($15,000 awarded for emotional distress where plaintiff testified that she suffered "continued stress, anger, sadness, and frustration," and "humiliation," and cried most days, was depressed, suffered panic attacks, headaches, nausea, loss of appetite, and insomnia, and broke out in hives).  Beaulieu's demand for $10,300 is reasonable, in light of the record before this court.  Accordingly, the district judge should order Ruiter to pay the full amount of compensatory damages demanded by Beaulieu, $10,300, as compensation for the injuries and emotional distress caused by the January 2012 attack.

    B.    Damages as to Collier's Conduct

Beaulieu also seeks $10,300 in compensatory damages for physical injuries and mental suffering on her claim against Collier, relating to the March 2014 incidents.  Specifically,

she demands $5,300 as compensation for the assault and $5,000 for "emotional distress," plus costs. Doc. No. 93-1.

Beaulieu testified that Collier intentionally sprayed her twice with a firehose, without her consent, while Collier and Beaulieu were cleaning SPU shower stalls together on one occasion in March 2014. In particular, Beaulieu testified that Collier stood about one foot away from her both times and sprayed her directly in the face each time, laughing and taunting her while he did so. Beaulieu testified that she told Collier to stop it, while it was happening, but Collier kept spraying Beaulieu, only letting up after five minutes the first time, and then relenting after two or three minutes the second time.

A written description of the incident drafted by Beaulieu within days of its occurrence, see Dep't of Corrs. ("DOC") Resident Request Slip, Mar. 9, 2014 (Doc. No. 59-17, at 4) ("March 9 RRS"), describes the incident, in pertinent part, as follows:

> On March 7, 2014 Inmate Collier spray[ed] me with the Fire Hose (3x's), 2x's in front of Officer Kum. [Collier] was never locked down. Well I had my cloth[es] soaked. . . .

Id. The March 9 RRS specifically asks that "something be done about [Collier]." That statement and the grievances relating to the same incident -- in which Beaulieu characterizes the

11

incident as an "assault" warranting an investigation, see DOC Grievance Form, May 12, 2014 (Doc. No. 59-17, at 1) -- are consistent with the admitted allegations that the assault occurred, but do not corroborate Beaulieu's specific testimony regarding the intensity of the spray and its direct, forceful application to her face.

There are no contemporaneous medical records of the incident. Beaulieu testified that the firehose spray caused her eye pain for which she sought medical attention after the spraying incident, but she was told by a nurse at that time that she would be "fine." Beaulieu testified that the nurse made no written report of Beaulieu's complaints.

As to emotional harm, Beaulieu testified that the firehose incident exacerbated the PTSD symptoms she feels that are triggered when she sees fire suppression sprinklers. Beaulieu testified that she was in a county jail prior to the incidents at issue in this case when sprinklers "popped" and blasted water in her cell. She testified that the sound the firehose made when water was released is similar to the sound that the sprinklers made. She testified that when she is around fire sprinklers, she has panic attacks, generally lasting five minutes, involving her chest tightening, her vision blurring, and her breathing becoming difficult, and that the firehose

incident replays in her mind at those times. She further testified that Collier has brought up the firehose incident to harass her whenever he has returned to the state prison, and that his harassment of her causes her to relive the event.

 While the court does not question that a battery occurred, and deems Collier's liability for it to be admitted, no award of substantial damages for the incident appears appropriate. In the first place, Beaulieu's testimony about being blasted in the face by a high pressure firehose for up to five minutes at point blank range, did not appear credible to the court. Written accounts of the incident prepared by Beaulieu within days or weeks of the incident, while consistent with a finding that Collier sprayed Beaulieu with a firehose, are notably lacking in detail regarding the force of the spray, its direction, or its impact on Beaulieu's eyes and mental health. In that respect, such contemporaneous written accounts do not substantiate her present claim for substantial damages for pain and suffering or emotional distress, resulting from the firehose incident.

 Furthermore, the emotional distress Beaulieu described in her testimony does not appear to be the type of reasonable and foreseeable consequence to getting sprayed while cleaning a shower, for which expert testimony would be unnecessary. In particular, the record does not provide this court with a

reasonable basis for allocating any substantial part of Beaulieu's panic attacks to the firehose incident. Expert testimony would be necessary to reasonably apportion damages between the firehose incident and other traumatic events in Beaulieu's life that predate that incident. An award of any substantial damages for emotional distress arising from the firehose incident is not reasonable under the circumstances. Accordingly, the district judge should enter a default judgment as to Collier for the firehose incident and should award her only $1 as nominal damages on that claim.

### III. Costs

Beaulieu seeks an award of costs with respect to her claims against Ruiter and Collier. Beaulieu has specifically demanded $85.16 as to Collier, and an unspecified additional amount, for serving Collier's and Ruiter's summonses and the complaint.[3]

Federal Rule of Civil Procedure 54(b) authorizes an award of costs to a prevailing party. Federal law lists the type of costs that may be taxed by the court, see, e.g., 28 U.S.C. § 1920, and the manner in which those costs must be proven, see id. at § 1924 (setting forth the requirement that prevailing

---

[3]Beaulieu did not verify her costs by way of any notarized affidavit or declaration executed under penalty of perjury. The court effected service on those defendants by ordering the U.S. Marshals Service to serve process on them.

party file affidavit verifying bill of costs). Local Rule 54.1 sets forth procedures to be followed in this court by a prevailing party claiming costs. As plaintiff's demand for costs in this action does not include the information required by either LR 54.1 or 28 U.S.C. § 1924, this court lacks the information it requires at this time to tax costs in this case. Accordingly, plaintiff's request for an award of costs as to both Ruiter and Collier should be denied without prejudice to refiling, in accordance with the procedures required by law and LR 54.1.

**IV. Prejudgment Interest**

This court applies New Hampshire law in determining Beaulieu's entitlement to prejudgment interest. See Berkowitz v. Berkowitz, 817 F.3d 809, 814 (1st Cir. 2016). "'Ordinarily, upon a verdict for damages and upon motion of a party, interest is to be awarded as part of all judgments.'" State v. Exxon Mobil Corp., 168 N.H. 211, 265, 126 A.3d 266, 309 (2015) (citation omitted), cert. denied, 136 S. Ct. 2009 (2016). While Beaulieu has not specifically requested an award of prejudgment interest, such an award is appropriate here to compensate her more completely.

New Hampshire law authorizes an award of prejudgment interest to a prevailing party, accruing on the amount of

damages awarded, from the date of the filing of the action to the date of entry of judgment. See N.H. Rev. Stat. Ann. ("RSA") 524:1-b; see also Exxon Mobil Corp., 168 N.H. at 266, 126 A.3d at 309. A state statute, RSA § 336:1, II, provides the applicable interest rate. The pertinent accrual date in this case is March 31, 2015, when Beaulieu placed his motion to add Collier and Ruiter as defendants in the prison mail system. Accordingly, the district judge should direct the clerk to add prejudgment interest to the damages awarded in this case, applying the state statutory rate, using March 31, 2015 as the accrual date.

**V.   Periodic Payments**

Beaulieu requests that this court establish a payment schedule for the damages awarded on her claims against Collier and Ruiter. The request for a payment plan as to Collier should be denied. The request as to Ruiter should be denied without prejudice to refiling, should Beaulieu find that she is unable to collect on any judgment issued by this court.

## Conclusion

For the foregoing reasons, Beaulieu's motions for default judgments (Doc. Nos. 92, 93) as to Collier and Ruiter should be granted. Nominal damages in the amount of $1 should be entered

as to the claims against Collier, and compensatory damages in the amount of $10,300 should be awarded as to the claims against Ruiter. An award of prejudgment interest, running from March 31, 2015 to the date of the judgment, should be added to the damage awards, calculated using the rate of interest described in RSA § 336:1, II. The district judge should deny Beaulieu's request for an award of costs as to Collier and Ruiter, without prejudice to Beaulieu's ability to refile a motion for such costs, pursuant to LR 54.1 and 28 U.S.C. § 1924, and the district judge should also deny Beaulieu's request that the court establish a periodic payment schedule for Collier and Ruiter.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 2, 2017

cc:  Christopher (Crystal) Beaulieu, pro se
     Laura E.B. Lombardi, Esq.

```
Scott Collier (c/o last known address)
Rueben James Ruiter (c/o last known address)
```