UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Beaulieu,
a/k/a Crystal Beaulieu

    v.                                    Case No. 14-cv-280-SM

John P. Aulis, Aaron M. Belanger,
Edward P. Kirrane, Dominic M. Salce,
Michael Shepley, Paul Laflamme,
Kevin Washburn, Jason Whitney,
Scott Collier, and Rueben James Ruiter

**REPORT AND RECOMMENDATION**

The court held an evidentiary hearing on March 14, 2019 to assess whether Rueben James Ruiter (a/k/a Rueben Bushnell) ("Bushnell") should be ordered to make periodic payments on the $10,300.00 default judgment he owes to plaintiff Christopher (a/k/a Crystal) Beaulieu, pursuant to N.H. Rev. Stat. Ann. ("RSA") § 524:6-a and Fed. R. Civ. P. 69. See generally Jan. 28, 2019 Order (Doc. No. 134). Beaulieu and Bushnell both appeared pro se at the evidentiary hearing.

Bushnell testified under oath and was examined by both Beaulieu and the court regarding his property and sources of income. The court had before it financial records relating to Bushnell's inmate account filed under seal at Level II by the New Hampshire Department of Corrections ("DOC"), see Doc. No. 143, which this court used in examining Bushnell.

## Standard

N.H. Rev. Stat. Ann. ("RSA") § 524:6-a, I, provides this court with discretion to order a judgment debtor to make periodic payments from non-exempt property and income to satisfy the judgment and cost of the proceedings, "after allowing the debtor an appropriate amount for his or her support and that of the debtor's family." N.H. Super. Ct. R. 51(g).

> The court may prescribe the times, places, amount of payments and other details in making any of its orders. The court may at any time review, revise, modify, suspend or revoke any order made. Failure to obey any lawful order of the court, without just excuse, shall constitute a contempt of court.

N.H. Super. Ct. R. 51(h).

If the court finds that "the debtor has no property other than property that is exempt from attachment or execution and that the debtor is unable to make weekly payments on the judgment," the request for periodic payments will be denied. N.H. Super. Ct. R. 51(f). The judgment creditor bears the burden of proof relevant to the identification of non-exempt property and the debtor's ability to pay. See Key Bank v. Latshaw, 137 N.H. 665, 674, 633 A.2d 952, 958 (1993); see also N.H. Cir. Ct.-Dist. Div. R. 4.10(d) (plaintiff bears burden "to establish that the defendant has the ability to pay the judgment from non-exempt assets either in full or in installments").

**Personal and Employment History**

Bushnell is thirty-two.  He is divorced and has a minor son, but he does not presently have custody of his son and does not at this time provide financial support for his son or ex-wife.

Bushnell is an inmate at the Northern New Hampshire Correctional Facility ("NCF") who has been in and out of prison at times in the last ten years.  Although the maximum term of Bushnell's current sentence is set to expire in February 2022, he becomes eligible for parole in August 2019, see DOC Online Inmate Locator, https://business.nh.gov/inmate_locator/.  Bushnell said he anticipates he may be paroled at that time.

Bushnell was named as a defendant in this case on a tort claim for assaulting Beaulieu while they were both incarcerated in January 2012.  Bushnell did not file an appearance in this case before the court ruled that he was liable for a $10,300.00 default judgment on that claim.  See Apr. 14, 2017 Order (Doc. No. 100) (approving Mar. 2, 2017 R&R (Doc. No. 98)).  In the March 14, 2019 hearing on Beaulieu's request for periodic payments on that judgment, Bushnell denied having taken any steps intending to conceal his whereabouts to avoid paying the judgment owed to Beaulieu in this case.

Bushnell's last nonprison job, which ended approximately three years ago, was at a lumber mill, earning $12.00 per hour. Bushnell testified that he thinks he could get that job again when he is released.  Bushnell has also worked as a self-employed construction contractor and hopes to resume that work if he is able to earn and save enough money.

### **Property and Current Income**

Bushnell testified that he does not own a house or any land, and he has no savings, bank accounts, or other non-exempt property.  He stated that he sold a pick-up truck more than a year ago, but the buyer never paid him the $500.00 agreed-upon sale price.  Bushnell has not sold any other property in the last three years.

Bushnell does not presently have a prison job.  He receives $5.00 each week in the form of inmate base pay, which is subject to automatic deductions.  See Certificate of Custodial Inst., Doc. No. 143.  Bushnell testified that he does not generally receive deposits from outside sources.

With the exception of five separate deposits from two sources totaling $195.00 made in October/November 2018, Bushnell's six-month inmate account statement, Doc. No. 143, does not show that he received any deposits from outside sources

4

during that period. Bushnell explained that $20.00 of the funds deposited to his account in November 2018 just prior to his transfer to NCF came from a friend who has occasionally given him money; there is no evidence that Bushnell received any other deposits from that individual in the six months that ended in late January 2019. The remaining four deposits in October 2018, totaling $175.00, came from a different person, identified by Bushnell as another inmate's girlfriend. Bushnell testified that he received those deposits for the benefit of that other inmate; Bushnell then used the funds to make canteen purchases for that other inmate in October 2018. Bushnell said that he agreed to that arrangement to allow the other inmate to avoid automatic deductions that would have been applied to those funds if they had been deposited directly to that other inmate's account. DOC financial records for Bushnell, reflecting deposits made by that individual in October 2018 followed by Bushnell's canteen purchases, are consistent with Bushnell's testimony. See Doc. No. 143.

## **Expenses**

Bushnell testified that he owes $4,000.00 in court-ordered restitution along with a fine that he said totaled $250.00. Bushnell's inmate account statement shows that for each week of

the six-month period beginning in July 2018, 10% of each deposit (amounting to $0.50 of each $5.00 credit for Bushnell's inmate pay) was automatically withdrawn from his inmate account to pay court-ordered restitution. See Doc. No. 143. Bushnell explained that he also owes the DOC a fine as a result of November 2018 disciplinary proceedings. The evidence before this court suggests that a disciplinary fine assessed against him beginning in November 2018 exceeds $250.00, as 50% ($2.50) of Bushnell's weekly pay was automatically withdrawn from his inmate account each week for each of the last eleven weeks of the period ending in late January 2019 for which there is evidence in the record, see Doc. No. 143. At the March 14, 2019 hearing, Bushnell testified he was currently receiving only half of his weekly inmate pay after withdrawals for his institutional obligations and court-ordered restitution.

Prior to October 2018, Bushnell made monthly canteen purchases exceeding $19.00 each month. Bushnell cut his canteen purchases down to about $8.00 per month after his available income dropped to $2.00 each week. See Doc. No. 143. Bushnell testified that some of his canteen purchases are for hygiene products, which the DOC does not provide to inmates. Although inmates are generally required to pay $3.00 for each inmate-

initiated, non-emergency dental or medical visit,[1] there is no record of Bushnell incurring any such co-pays from late July 2018 until late January 2019, see Doc. No. 143.

**Discussion**

Bushnell's testimony in general and, in particular, regarding his present lack of bank accounts, lack of property ownership, and lack of regular, reliable sources of outside income, was credible. Bushnell's description of his current institutional income and debts was also credible and generally consistent with the financial records produced by the DOC. Bushnell, who maintained a monthly inmate account balance of less than $2.00 per month over the six months starting in late July 2018, received only $2.00 per week through the end of January 2019. Bushnell's obligation to pay assessments amounting to 50% of the money deposited to his account as inmate pay appears to have continued up to the date of the March 14, 2019 hearing, as Bushnell testified that he received only $2.50 per week after such deductions were made. An unspecified portion of the income Bushnell actually receives each week is necessarily used at times to pay for self-care items that

---

[1] See Health Care Co-Pay, DOC Policy and Proc. Directive 6.16 (Apr. 1, 2008), https://www.nh.gov/nhdoc/policies/documents/6-16.pdf (last accessed May 2, 2019).

inmates do not receive free of charge. Such personal expenses may equal or exceed Bushnell's weekly pay on some occasions. Bushnell does not have any property, savings, or regular, reliable income streams from outside sources at this time.

There is no evidence upon which this court could base a finding that Bushnell will receive a substantial increase in pay or a marked reduction in his weekly obligations in the foreseeable future. The speculative nature of the evidence regarding Bushnell's parole prospects and outside job opportunities, and the absence of evidence regarding how much income Bushnell would need to cover his expenses upon his release, taken together, preclude this court from finding that Bushnell could pay any part of the judgment if he were paroled.

The evidence in the record indicates that Bushnell has neither the property, nor an ability to pay any substantial portion of his inmate income, either in a lump sum or in installments, towards the judgment owed to Beaulieu, while he remains subject to his current financial and personal constraints. In accordance with the pertinent requirements of state law, see, e.g., N.H. Super. Ct. R. 51, the request for a periodic payment order is properly dismissed. An Order approving this Report and Recommendation should issue without prejudice to Beaulieu's ability to file a future petition for

periodic payments on the judgment in a court of competent jurisdiction, no sooner than one year from the date of that Order, unless there is good cause for an earlier filing, if there is evidence that a substantial change in Bushnell's circumstances would allow for payments to be made on the judgment. See generally N.H. Super. Ct. R. 51.[2]

## Conclusion

For the foregoing reasons, the district judge should dismiss the request for an order requiring Bushnell to pay any amount towards the judgment owed to Beaulieu in this case, without prejudice to Beaulieu's ability to file a new petition for such periodic payments in a court of competent jurisdiction no sooner than one year from the date of the Order on this Report and Recommendation (or sooner if accompanied by a motion showing good cause).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified

---

[2] If a request for periodic payments is dismissed, the judgment creditor "shall not file within one year after the date of such dismissal another motion against the same debtor upon the same judgment unless the court otherwise for good cause orders." N.H. Super. Ct. R. 51(j).

time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*(signature)*

Andrea K. Johnstone
United States Magistrate Judge

May 6, 2019

cc: Christopher (Crystal) Beaulieu, pro se
    Laura E.B. Lombardi, Esq.
    Rueben James (Ruiter) Bushnell, pro se